IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY J. RAZZANO,                )
                                   )
       Plaintiff,                  )
                                   )
    v.                             )   C.A. No. 17-1033
                                   )
VMI NUTRITION, INC., D/B/A GENYSIS )
BRAND SOLUTIONS, INC., AND         )
JEFFERY REYNOLDS, INDIVIDUALLY     )
AND AS A REGISTERED AGENT OF       )
VMI NUTRITION, INC., D/B/A GENYSIS )
BRAND SOLUTIONS, INC. AND FEEL     )
FIT ENTERPRISES LLC,               )
                                   )
       Defendants.                 )

**MEMORANDUM OPINION AND ORDER**

Cynthia Reed Eddy, United States Magistrate Judge.

## I.  INTRODUCTION

Presently before the court is a Motion to Dismiss (ECF No. 15) filed on behalf of Defendants VMI Nutrition, Inc. d/b/a Genysis Brand Solutions, Inc. ("VMI"), Jeffery Reynolds, and Feel Fit Enterprises LLC.  For the reasons stated herein, the motion will be granted and the plaintiff will be granted leave to amend.

## II.  STATEMENT OF FACTS

Plaintiff Anthony J. Razzano's Amended Complaint ("Complaint") (ECF No. 14)  alleges as follows. Exclusive Supplement, Inc., a sports supplement company, issued one hundred shares of capital stock during its inception, which were owned by Mark Mangieri. Amended Complaint at ¶¶ 9, 10, 11.  Plaintiff purchased stock and entered into a Shareholder Buy/Sell Agreement with Mangieri in June 2014, the combined effect of which was that Plaintiff' acquired 35 shares

of stock in Exclusive, which stock had a minimum value of $390,000.00. *Id.* at ¶¶ 12, 14. Subsequently, Plaintiff left his job as an accountant to become Exclusive's Chief Financial Officer. *Id*. at ¶15. In August 2014, the Food and Drug Administration ("FDA") reinvestigated Exclusive's prior non-compliance and issued 14 citations for manufacturing and labeling noncompliance. *Id.* at ¶ 16-17. As a result, Mangieri resigned as Chief Executive Officer; Plaintiff replaced him in that office. *Id.* at ¶18. Thereafter, Exclusive and the FDA met in Philadelphia and Plaintiff agreed to conduct an investigation and provide a corrective action plan. *Id.* at ¶¶ 19-20. Pursuant to that internal investigation, Plaintiff found Mangieri did not know the components of Exclusive products' flavoring system and committed multiple FDA manufacturing guideline violations. *Id.* at ¶ 22. Plaintiff obtained formulas for Exclusive's products and presented them to Defendant VMI in Salt Lake City, Utah to see if the latter could match the products' flavoring system and cure the compliance issues. *Id.* at ¶¶ 23-24. In December 2014, Plaintiff terminated its prior manufacturer, Vitaquest, for cause. *Id.* at ¶ 25. Thereafter, Exclusive and VMI entered into a supply agreement. *Id.* at ¶ 26 & Ex. A. Reynolds signed the Agreement as Chief Executive Officer of VMI, and Razzano, as Chief Executive Officer of Exclusive. (ECF No. 14-1 at 14).

On March 7, 2015, Mangieri resigned as President of Exclusive and Plaintiff was appointed President by unanimous consent of the Board of Directors of Exclusive. *Id.* at ¶ 28. Exclusive terminated Mangieri for cause and repurchased Mangieri's 65 shares of Exclusive stock, thus leaving Plaintiff as the sole individual shareholder of the issued Exclusive stock. *Id.* at ¶¶ 29-30. Mangieri sued Plaintiff, Exclusive, and others in the Court of Common Pleas of Allegheny County. *Id.* at ¶ 31. After cross motions for summary judgment were denied, Razzano attempted to sell his 35 individual shares of stock. *Id.* at ¶ 32.

Due to the mismanagement during Mangieri's tenure at Exclusive, Exclusive failed to pay numerous trade vendors, including VMI. *Id.* at ¶ 33. Further, Exclusive failed to service a loan with First National Bank, secured with its intellectual property. *Id.* at ¶ 34.

In late July 2015, Plaintiff, Steven Andersen ("Andersen"), Reynolds and Exclusive drafted a letter of intent for Andersen and Reynolds (referred to throughout Plaintiff's Complaint, as "Reynolds Group") to purchase Exclusive's outstanding debts and assets. *Id.* at ¶ 35 & Ex. B. Plaintiff rejected the proposed letter of intent by the Reynolds group in favor of a different offer made by Afterglow Holding Company Limited ("Afterglow") to purchase Plaintiff's stock for $500,000 *Id.* at ¶¶ 36, 37 & Ex. C. Michael J. Tarutis signed the letter of intent on behalf of Afterglow. The letter of intent included a period of due diligence prior to the purchase of sale and final approval of a definitive agreement. *Id.*

Plaintiff alleges Tarutis on behalf of Afterglow and Reynolds "had multiple conversations concerning the transaction with Plaintiff and how it could be of benefit to each party." *Id.* at ¶ 38. On August 24, 2015 Shane Howell, Executive Vice President of VMI, sent an email to Tarutis stating among other things, "[l]ooking forward to working with you on this." *Id.* at ¶ 39. Mr. Howell also included information on VMI's credit default insurance. *Id.* at ¶ 41. Plaintiff alleges "[u]pon information and belief this communication of credit default insurance dissuaded Tarutis and Afterglow Holdings Limited from going through with the stock purchase agreement and thus not showing up for the rescheduled August 31, 2015 closing." *Id.* at ¶ 41.

Plaintiff further alleges "Defendants (Genysis/Reynolds) communicated the existence of Genysis's credit default insurance to dissuade Tarutis and Afterglow Holdings Limited from closing on the Stock Purchase Agreement, thereby guaranteeing the default of Exclusive, in an effort to wrongfully receive compensation from a credit default insurance carrier. Defendant

Reynolds, individually and as part of Defendant Genysis, planned to use the increased liquidity from the insurance carrier to capitalize (in part) Defendant Feel Fit and carry out the plan of acquiring the intellectual property they sought in the July 31, 2015 letter of intent proposed by the Reynolds Group." *Id.* at ¶ 42. Subsequently, Reynolds for his own personal gain and on behalf of the newly capitalized Defendant Feel Fit bought the Exclusive note from First National Bank that was secured by all of Exclusive's assets including Exclusive's intellectual property. *Id.* at ¶ 43. Feel Fit foreclosed on that loan and now owns the collateral, i.e., Exclusive's intellectual property. *Id.* at ¶ 44. The Amended Complaint continues: Upon information and belief, at all times during the planning and execution of the above described interference, Defendant Reynolds, acting in his own personal capacity and in a corporate capacity for both Defendant Genysis and Defendant Feel Fit, was physically present in Western Pennsylvania, specifically the greater Pittsburgh area." *Id.* at ¶ 45.

The Amended Complaint alleges a single count of intentional interference with prospective business relations against all defendants, under Pennsylvania law. As a result of this interference Plaintiff seeks damages for the value of the prospective stock purchase agreement, $500,000, as well as for the harm to his professional reputation and legal fees incurred in the drafting of the letters of intent, which would have been paid by the buyer Afterglow Holdings Limited. *Id.* at ¶ 51-53.

We have diversity jurisdiction. 28 U.S.C. § 1332.

### III. DISCUSSION

#### A. Motion to Dismiss—Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell*

4

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation omitted). While a complaint need not include detailed facts, it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether the Amended Complaint will survive the Defendants' motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, where a complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.* This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87). This plausibility standard, however, "does not impose a heightened pleading requirement." *Id.* In other words, "courts cannot inject evidentiary issues into the plausibility determination." *Id.* The Third Circuit has also made it clear that "at least for purposes of pleading sufficiency, a complaint need not

establish a prima facie case in order to survive a motion to dismiss" because a "prima facie case is an evidentiary standard, not a pleading requirement and hence is not proper measure of whether a complaint fails to state a claim." *Connelly*, 809 F.3d at 789 (internal quotations and citations omitted). Instead, a plaintiff should plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Id.* (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)).

### B. Analysis of Claim

Defendant argues that the Court should dismiss the Amended Complaint because it fails to state a claim upon which relief can be granted and because this court lacks personal jurisdiction over Defendants Feel Fit and Reynolds.

Under Pennsylvania law, the elements of intentional interference with prospective contractual relations are: (1) the existence of a prospective contractual relationship between the plaintiff and a third party; (2) a purpose or intent to harm an existing relationship or to prevent a prospective relationship from accruing; (3) the absence of privilege or justification on the part of the defendant; and (4) the occurrence of actual harm or damage to the plaintiff as a result of the defendant's conduct. *Brunson Communications, Inc. v. Arbitron, Inc.*, 239 F.Supp.2d 550, 578 (E.D. Pa. 2002). A "prospective contract" is "'something less than a contractual right, something more than a mere hope.' ... [I]t exists if there is a reasonable probability that a contract will arise from the parties' current dealings." *Alvord–Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1015 (3d Cir.1994) (quoting *Glenn v. Point Park College*, 441 Pa. 474, 272 A.2d 895, 898–899 (1971)); *see also Mill Run Assocs. v. Locke Prop. Co.*, 282 F. Supp. 2d 278, 286 (E.D. Pa. 2003). Tortious interference with prospective contracts is evaluated under the same four-part test from *Citizens Bank*, noted above. 7 A.3d at 288–89; *see also* Restatement (Second) of Torts § 766.

6

The Amended Complaint alleges the existence of prospective contractual relations with third parties. A plaintiff in a prospective interference case must allege that there was a reasonable likelihood that the contract would have materialized absent the defendant's actions. *Devon Robotics v. Deviedma*, No. 09-3552, 2009 WL 4362822, at *7 (E.D. Pa. Nov. 30, 2009) (citing *Glenn v. Point Park Coll.*, 272 A.2d 895, 898–99 (Pa. 1971)).

In addition to the above allegations, which are incorporated into Count I, Plaintiff avers that Defendants VMI and Reynolds knew Plaintiff expected an economic benefit from the letter of intent, and further, that VMI, Reynolds and Feel Fit wrongfully and intentionally interfered with such expectation by committing the following non-exhaustive list of unlawful acts:

> a. Retaliating against Plaintiff's denial of Defendant Reynolds' take-over offer by dissuading Tarutis and Afterglow Holdings Limited from following through with the purchasing of Razzano's shares of Exclusive;
>
> b. Communicating privileged information to Tarutis and Afterglow Holdings Limited regarding the potential purchase of the assets and debts of Exclusive including but not limited to the First National Bank Note;
>
> c. Defendant Reynolds communicating the existence of credit default insurance to Tarutis knowing full well that this communication would dissuade Taurtis from closing on the deal.
>
> d. Defendant VMI and Defendant Reynolds, organized and capitalized (in part) Defendant Feel Fit to carry out the plan of acquiring the intellectual property of Exclusive, as proposed with the Letter of Intent submitted by the Reynolds Group on July 31, 2015.
>
> e. Ultimately purchasing the assets of Exclusive for each Defendants own financial gain.

Amended Complaint ¶ 49 a-e.

In assessing whether conduct is improper or intentional interference, the courts look to (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the

proximity or remoteness of the actor's conduct to the interference, and (f) the relations between the parties. *Adler, Barish Daniels, Levin & Creskoff v. Epstein*, 393 A.2d 1175, 1184 (Pa. (?) 1978). Defendants cite to *Walnut St. Assocs. v. Brokerage Concepts, Inc.*, 20 A.3d 468, 478 (Pa. 2011) and *Feldman & Pinto, P.C. v. Seithel,* 2011 WL 6758460 (Dec. 22, 2011). Defendants contend that the so-called "truth defense" permits an analytical bypass of the factors set forth in *Adler, Barish*. Defendants argue that there cannot be liability for interference with the prospective contractual relation in this case because as alleged, the email sent to Tarutis merely stated truthful information (the existence of credit default insurance). Because this insurance was VMI's – not Plaintiff's – even if it was privileged it was VMI's privilege, not Plaintiff's..

Defendants further argue Plaintiff's claims against Defendant Reynolds and Feel Fit should be dismissed because Plaintiff has not alleged sufficient specific act(s) of interference. As to Feel Fit, it is argued that as alleged had no involvement before the alleged harm occurred and thus, the Amended Complaint should be dismissed because there are no allegations it interfered with a prospective contract to cause damage to Plaintiff

VMI argues that the allegations of the Amended Complaint only allege that it is responsible for the conveyance of truthful information, which cannot be improper interference under the case law. It argues that the complaint itself confirms the statements' veracity, that Exclusive had substantial accounts payable and trade debt at the time Afterglow was considering the stock purchase and any stock purchaser would want to know the limits of VMI's insurance, given Afterglows due diligence rights as vested in its letter of intent.

In addition, Feel Fit argues that this court does not have personal jurisdiction over it because it was not involved in the actions alleged. Reynolds makes a similar claim because he was acting within his corporate capacity.

In response to these arguments, Plaintiff "anticipates that discovery will demonstrate that Genysis, Reynolds and Feel Fit are one and the same" and that all 3 were aware of the prospective stock purchase agreement between Plaintiff and Afterglow. (ECF No. 20 at 8). Plaintiff further argues that the communication of the existence of credit default insurance was improper and unjustified because Reynolds was subjected to a confidentiality agreement with Exclusive, and this agreement was violated when Reynolds supplied it without Plaintiff's consent. As to Reynold's personal involvement, Plaintiff argues he has alleged that Reynolds participated in the interference and scheme of acquiring Exclusive's assets; Plaintiff, citing the participation theory in his brief, intends through discovery to be able to determine that Reynolds, in his personal capacity and through his role as CEO of VMI was the orchestrator of the interference and sharing of confidential privileged information to dissuade Tarutis from closing on the stock purchase agreement. Plaintiff also notes that assets purchased by Feel Fit were Pennsylvania assets, sold in Pennsylvania stores.

At this juncture, it appears that the Amended Complaint could benefit from some fine tuning and added factual allegations; it lacks factual specificity in certain areas brought to light by Defendants' motion, as discussed above. It is clear from Plaintiff's brief that he intends to show that Reynolds, individually and as part of VMI planned to interfere with the prospective contractual relationship to the benefit of Feel Fit, of which he was also the president. The proposed participation theory would allege sufficient contacts with Pennsylvania to invoke our jurisdiction. The case should proceed to discovery in order to reveal whether evidence exists to support the various arguments Defendants have put forth. Plaintiff requests leave to amend in the event we find that he has not alleged sufficient facts to state a claim against Defendants as to the cause of action and as to personal jurisdiction. (ECF No. 20 at 16). Fed. R. Civ. P. 15(a)(2)

specifically provides that we should give leave to amend when justice so requires. This request will be granted.

AND NOW, to-wit, this 9th day of May, 2018, it is hereby ORDERED that Defendants' Motion to Dismiss (ECF No. 15) is GRANTED, the Amended Complaint is dismissed without prejudice. Plaintiff is granted leave to amend. The Second Amended Complaint shall be filed on or before May 30, 2018.

/s/ *Cynthia Reed Eddy*
Cynthia Reed Eddy
United States Magistrate Judge

Cc: record counsel via CM-ECF